IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE FRANK TRIPPETT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 16-5467** |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA; | : | |
| SETH WILLIAMS ESQ, DISTRICT | : | |
| ATTORNEY; DETECTIVE RAYMOND | : | |
| RODMAN; DETECTIVE WILLIAM | : | |
| MCCULLOUGH; POLICE OFFICER J. | : | |
| KEARNS; JILL KAMAN; PENN | : | |
| PRESBYTERIAN HEART INSTITUTE; | : | |
| PENN MEDICINE, HEART INSTITUTE, | : | |
| PRESBYTERIAN HOSPITAL; | : | |
| ELDA L. GOSS, COMMONWEALTH | : | |
| WITNESS | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                       **SEPTEMBER 29, 2017**

**MEMORANDUM**

This case arises from Plaintiff Terrance Trippett's arrest and prosecution for an alleged theft. Following his acquittal in state court, Plaintiff asserts claims arising under 42 U.S.C. § 1983 for false arrest and false imprisonment. Plaintiff also asserts defamation claims, presumably arising under Pennsylvania law, against all defendants. On October 20, 2016, I issued an order dismissing all claims against the Commonwealth of Pennsylvania and Seth Williams. The remaining defendants, excluding Elda Goss, who has not been served a summons and complaint, have moved to dismiss. Because an acquittal, standing alone, does not render criminal charges unlawful, and Plaintiff has not otherwise sufficiently alleged wrongful conduct, the Motion to Dismiss will be granted. I also dismiss all claims against Elda Goss.

**I. Facts**

On October 29, 2014, Plaintiff entered the clinic lobby of the Penn Presbyterian Heart Institute following a cardiology appointment. He signed out from his appointment around 2:00 or 2:30 pm.[1] An hour after Plaintiff left, a clinic employee, Jill Kaman, noticed that a handbag, which was on display to promote a fundraising raffle, had gone missing. Based on her observations of Plaintiff's behavior while signing out, and when she noticed the purse missing, Kaman suspected that he stole it. Among other things, she saw him bending over the purse shortly before it went missing. Clinic staff reported the theft to the University of Pennsylvania Police [hereinafter "Penn Police"]. Ms. Kaman provided a statement to Penn Police detective William McCullough. Detectives McCullough and Raymond Rodman interviewed Elda Goss, a witness who was present in the clinic lobby at the time of the alleged theft, at her home in New Jersey.

In her statement, Goss reported that she noticed an individual standing near the bag, and then watched him walk away with an object, which she described as twelve to fourteen inches in diameter, wrapped in a "[b]luish [g]reen" paper, and covered in cellophane wrap, which he was awkwardly clutching to his knee. Goss provided officers with a description of the suspect, stating that he appeared to be 5'8" to 6'0" in height, of "med[ium] dark" complexion, and wearing a green sweater and jeans that were ripped at the knee. Pl.'s Am. Compl. 14, ECF No. 10. As of this point in the litigation, Plaintiff appears to dispute only his height, which he contends is 5'5". *See* Pl.'s Resp. Br. 5, ECF No. 16. Detective McCullough showed Kaman a photocopy of Plaintiff's identification card, which Plaintiff had presented to Penn Presbyterian

---

[1] Plaintiff states that clinic employees accused him of removing the item at 2:30. Jill Kaman and Elda Goss both reported seeing Plaintiff in the clinic at 2:00. *See* Pl. Second Am. Compl. 12–13, ECF No. 10.

for his appointment. Based on the photocopy, Kaman identified Plaintiff as the person she suspected of taking the bag.

Officer James Kearns filed a complaint against Plaintiff on October 29, 2014. In an affidavit of probable cause dated December 2014, Detective McCullough relied on the witnesses' statements, as well as Jill Kaman's identification of Plaintiff based on his driver's license photograph. Magistrate Sheila Bedford subsequently issued a warrant for Plaintiff's arrest, and McCullough took him into custody. In April 2015, Judge Marvin L. Williams of Philadelphia Municipal Court found Plaintiff not guilty of all charges. Plaintiff contends that the Penn Police had no probable cause for his arrest, and that he was falsely accused.

## II. Claims against Detectives William McCullough and Raymond Rodman, and Officer James Kearns

Plaintiff here asserts claims for false imprisonment and false arrest under 42 U.S.C. § 1983, arising out of the Fourth Amendment's protection against unreasonable seizure. Defendants in reply contend that Plaintiff has failed to state a claim under Section 1983. A complaint need not present "detailed factual allegations" to survive a motion to dismiss. But it must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "state a claim to relief that is plausible on its face," *id.* at 570, which a plaintiff may achieve by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

An arrest executed without probable cause may give rise to a Section 1983 claim for false arrest, and, if meaningful detention results, false imprisonment. *Baker v. McCollan,* 443 U.S. 137, 142 (1979); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). But the

existence of probable cause is fatal to such claims. *Groman*, 47 F.3d at 636. As the Third Circuit has explained, a Section 1983 claim of false arrest turns not on "whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Detective McCullough was both the arresting officer and the officer who filed the affidavit of probable cause upon which a state judicial officer issued a warrant for Plaintiff's arrest. To survive a motion to dismiss, Plaintiff would need to show that McCullough deliberately presented false information or recklessly disregarded the truth when presenting an affidavit in support of a warrant, and that the misinformation was material in the finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56 (1978); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

Plaintiff has offered no such evidence. First, Plaintiff has not explained which elements of Detective McCullough's affidavit were untrue, other than to state that Elda Goss's description of him contains an inaccuracy as to his height. Pl.'s Resp. Br. 4, ECF No. 16. Second, Plaintiff alleged no facts evincing the materiality of any misrepresentation or omission. Third, Plaintiff offers no facts, other than conclusory statements, to suggest that any officer acted unreasonably in believing that probable cause existed.[2] Plaintiff has broadly alleged that law enforcement officials and clinic staff, acting in "bad faith," singled him out as a suspect, resulting in a "defective, deceptive" warrant, Pl.'s Resp. Br. 3, ECF No. 16, but has alleged no facts that would allow me to find it plausible that the behavior of any party was rooted in ill will, prejudice, or

---

[2] Plaintiff alleges only that officers "improperly investigated the event," and concluded, based on bias, that Plaintiff was the suspect. He adds that despite alleged factual deficiencies, officials acted maliciously in arresting and charging him. Pl.'s Am. Compl. 5, ECF No. 10; Pl.'s Resp. Br. 6, ECF No. 16. Admittedly, there were some discrepancies between the witnesses, and such discrepancies may indeed have contributed to Plaintiff's acquittal. But for purposes of conducting an investigation and determining probable cause, the officers had a basis to charge Mr. Trippett.

4

malice. Rather, the investigation notes he attached to the Amended Complaint, which supply the only factual content in this case, support a contrary inference. The notes reflect the investigating officers engaging in a methodical process of evaluating the evidence available to them. They show that in deciding to charge Plaintiff, the officers considered the timing of the offense, Plaintiff's opportunity to commit the offense, and his specific actions as observed at the time. Plaintiff has therefore not made out the elements of a Section 1983 action asserted against any defendant.

Finally, Plaintiff has not made out the elements of a defamation claim under Pennsylvania law. Defendants argue that Mr. Tripett has not specifically identified any defamatory statement. That much is true, but Plaintiff faces a more fundamental problem. By statute in Pennsylvania, where a communication is subject to a defense of qualified privilege, the plaintiff in a defamation action must prove "abuse of a conditionally privileged occasion." 42 Pa.C.S. § 8343(a)(7). In a Pennsylvania defamation case, the issue of privilege is initially a matter for judicial determination. *Dempsky v. Double,* 386 Pa. 542, 547, 126 A.2d 915, 917 (1956). "A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable probable cause." *Id*. at 546. Unquestionably, the official duties of police officers require them to make statements that qualify as defamatory—accusation of a crime—whenever charges are brought. As a result, only an abuse of that privilege can result in liability. Furthermore, under Pennsylvania law, the potential scope of tort liability on the part of the public employee is exceedingly narrow. Only if an officer acts maliciously or engages in willful misconduct will the defense of official immunity fail. 42 Pa.C.S. § 8550. Here, an analysis of the investigatory notes, which Plaintiff cites as factual support for his claims, undercuts any possibility of success on his defamation claim. The

record does not reasonably support an inference that the officers abused their privilege in charging Plaintiff with the theft or that their actions constituted willful misconduct.

**III. Claims against Penn Presbyterian Heart Institute and Jill Kaman**

Plaintiff has pled no facts suggesting that Penn Presbyterian or its employees are state actors. On this deficiency alone, I must dismiss Plaintiff's Section 1983 claim against Penn Presbyterian and Jill Kaman. As a division of the Trustees of the University of Pennsylvania, *see* Def.s' Mot. Dismiss 2, ECF No. 14, Penn Presbyterian is a private entity. With no showing that the institution's or its employees' actions are attributable to the state, Plaintiff has presented no reason to consider Penn Presbyterian or its employees to be state actors. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982); *Hodge v. Paoli Mem'l Hosp.*, 576 F.2d 563, 564 (3d Cir. 1978) (holding that receipt of federal funds and state licensing regulations did not make a private hospital a state actor).

Nor has Plaintiff pled the elements of a defamation claim against Jill Kaman. The complaint suggests that Plaintiff considers Kaman's statement to Detective McCullough to be defamatory. First, Plaintiff has not adequately identified the defamatory communication. Second, an interview with a detective is also subject to conditional privilege. *Dempsky v. Double*, 386 Pa. 542, 547, 126 A.2d 915, 917 (1956) (holding that defendant's statement accusing public employee of misuse of public property constituted a conditionally privileged communication). Evidence of malice may dissolve this privilege, but Plaintiff has alleged no such facts. *Id*. Once again, the interview notes incorporated as an exhibit to Plaintiff's Complaint do not suffice as evidence of his claim.

**IV. Claims against Elda Goss**

Plaintiff has not served a summons and complaint upon Elda Goss. Goss has therefore had no opportunity to respond to Plaintiff's complaint. I will not instruct the Marshals Service to deliver a summons, however, because service would be futile. Plaintiff has not stated any claim against Goss. Elda Goss spoke to Penn Police detectives as a private citizen. By speaking to police officers, Goss did not act "under color of law," as required for liability under 42 U.S.C § 1983. Plaintiff has alleged no facts indicating "joint action" with the state that could qualify Goss as a state actor for purposes of Section 1983. *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Nor has Plaintiff plead the elements of a defamation claim against Goss. As noted above, Plaintiff's complaint offers no specificity as to what conduct resulted in the alleged defamation, and her statement should be entitled to qualified privilege. For these reasons, I dismiss all claims against Elda Goss.

**V. Conclusion**

Plaintiff is proceeding *pro se* and therefore entitled to substantial latitude. Nonetheless, I am persuaded that dismissal should be with prejudice because another amendment would be futile. *Alston v. Parker,* 363 F. 3d 229, 235 (3d Cir, 1997). The records of investigation Plaintiff cites as a factual basis for his claims do not paint a portrait of malice or misconduct. Plaintiff's acquittal certainly lends some support to the conclusion that the witnesses and investigating officers might have been mistaken. But there is a vast difference between the level of proof required for conviction and the degree of evidence required to establish probable cause, and mistakes fall short of malice or misconduct.

      /s/ Gerald Austin McHugh
United States District Judge